TEXACO, INC., Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent.

PAN AMERICAN PETROLEUM CORPO-
RATION, Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent.

SUN OIL COMPANY, Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent.

Nos. 6947, 7135, 7217, 6973, 7002,
7303, 7179.

United States Court of Appeals
Tenth Circuit.

May 20, 1963.

Alfred C. DeCrane, Jr., Houston, Tex., and James J. Flood, Jr., Houston, Tex. (P. F. Schlicher, New York City, and P. R. Wimbish, Tulsa, Okl., on the briefs), for petitioner, Texaco, Inc., in Nos. 6947, 7135, and 7217.

William H. Emerson, Tulsa, Okl., and Carroll L. Gilliam, Washington, D. C. (J. P. Hammond, Tulsa, Okl., Thomas J. Files, Casper, Wyo., Harold H. Young, Jr., Tulsa, Okl., and William J. Grove, and Dow, Lohnes & Albertson, Washington, D. C., of counsel, on the briefs), for petitioner, Pan American Petroleum Corporation, in Nos. 6973, 7002, and 7303.

John A. Ward, III, Philadelphia, Pa. 'Phillip D. Endom, New Orleans, La., Joiner Cartwright, Herf M. Weinert, Charles F. Heidrick, Beaumont, Tex., J. Colbert Peurifoy, Dallas, Tex., Robert E. May, Louis Flax, John T. Ketcham and May, Shannon & Morley, Washington, D. C., and Martin A. Row, Dallas, Tex., of counsel, on the brief), for petitioner, Sun Oil Co., in No. 7179.

Peter H. Schiff, Attorney, Washington, D. C. (Richard A. Solomon, General Counsel, Howard E. Wahrenbrock, Solicitor, and Milton J. Grossman and Arthur H. Fribourg, Attorneys, Federal Power Commission, on the briefs), for respondent, Federal Power Commission.

Before MURRAH, Chief Judge, and BREITENSTEIN and HILL, Circuit Judges.

BREITENSTEIN, Circuit Judge.

These seven cases present another episode in the history of the regulation by the Federal Power Commission of independent producers of natural gas subject to its jurisdiction. Basically the issue is the right of the Commission to reject summarily and without a hearing a gas-purchase contract between a producer and a pipeline company on the ground that the contract contains indefinite price-changing clauses forbidden by Commission regulations.

At the outset we are faced, in all but one of the cases, No. 7303, with the Commission's procedural objections to the right of the producers to maintain petitions for review in this court. The insistence of the parties on their procedural rights impels us to resist the temptation to go directly to the heart of the controversy.

The struggles of the Commission to administer the Natural Gas Act so as to regulate producers have been described many times in Commission reports and decisions and in court decisions. We shall review the situation only to the extent necessary for a background to the phase of the problem with which we are concerned.

In United Gas Pipe Line Co. v. Mobile Gas Service Corp., 350 U.S. 332, 338,

341, 76 S.Ct. 373, 377–378, 379, 100 L. Ed. 373, the Supreme Court said that the Natural Gas Act [1] did not "abrogate private rate contracts as such" and construed §§ 4 and 5 of the Act [2] as parts of a statutory scheme under which "all rates are established initially by the natural gas companies." The gas is ordinarily sold in the field by a producer to a pipeline company which transports the gas to the area of use and there sells it to a retailer who makes distribution to the ultimate consumers. The pipelines must have a committed source of gas supply sufficient to justify financing, construction, and operation. That supply is ordinarily obtained by long-term contracts of 20 years or more. The negotiation of a long-term contract presents problems of the continued fairness and adequacy of the original selling price.[3] These problems have given rise to price escalation provisions.[4] We have recognized contractual provisions for price escalation as unabrogated by the Act.[5]

Within three months after the Mobile decision, the Commission gave notice in Docket No. R–153 [6] of a proposed regulation to prohibit the filing of producers' contracts containing either pricing clauses tied to buyers' rates and pricing indices, or favored-nation clauses. This docket lay dormant until March 3, 1961, when the Commission issued its Order No. 232 [7] declaring provisions for adjustment in price denoted as "indefinite escalation" clauses to be "inoperative and of no effect at law" in contracts tendered for filing after April 2, 1961. This order was superseded by Order No. 232–A [8] which added the following to the definition of "rate schedule" as contained in § 154.93 of the regulations:

"*Provided,* That in contracts executed on or after April 3, 1961, for the sale or transportation of natural gas subject to the jurisdiction of the Commission, any provision for a change of price other than the following provisions shall be inoperative and of no effect at law; the permissible provisions for a change in price are:

"(1) provisions that change a price in order to reimburse the seller for all or any part of the changes in production, severance, or gathering taxes levied upon the seller;

"(2) provisions that change a price to a specific amount at a definite date; and

"(3) provisions that, once in five-year contract periods during which there is no provision for a change in price to a specific amount [paragraph (2)], change a price at a definite date by a price-redetermination based upon and not higher than a producer rate or producer rates which are subject to the jurisdiction

---

1. 15 U.S.C. § 717.

2. 15 U.S.C. §§ 717c and 717d.

3. Cf. United Gas Pipe Line Co. v. Memphis Light, Gas and Water Division, 358 U.S. 103, 113, 79 S.Ct. 194, 3 L.Ed.2d 153.

4. These provisions take many forms such as two-party favored-nation, three-party favored-nation, periodic escalation, redetermination, and spiral escalation. For the purposes of this decision an explanation of the differences is unnecessary except, as will later be discussed, in the differentiation between definite price-changing clauses and indefinite price-changing clauses.

5. Cities Service Gas Producing Company v. Federal Power Commission, 10 Cir., 233 F.2d 726, 730, certiorari denied 352 U.S. 911, 77 S.Ct. 149, 1 L.Ed.2d 118 (adjust-

ments based on "prevailing field price" in a specific area); Phillips Petroleum Company v. Federal Power Commission, 10 Cir., 258 F.2d 906, 918 (escalations tied to the "weighted average royalty rate" in a defined area); Kerr-McGee Oil Industries, Inc., v. Federal Power Commission, 10 Cir., 260 F.2d 602 (adjustments in ratio to pipeline company's resale rate); Warren Petroleum Corporation v. Federal Power Commission, 10 Cir., 282 F.2d 312 (adjustments under two-party favored-nation clause).

6. 21 Fed.Reg. 2388, April 12, 1956.

7. 25 F.P.C. 379, 26 Fed.Reg. 1983, March 8, 1961.

8. 25 F.P.C 609, 26 Fed.Reg. 2850, April 6, 1961.

of the Commission, are not in issue in suspension or certificate proceedings, and are in the area of the price in question."

Hereafter we shall refer to contract provisions permissible under Order No. 232–A as definite price-changing clauses and to those impermissible under that order as indefinite price-changing clauses.

Pursuant to notice given on October 10, 1961, in Docket No. R–203,[9] the Commission, on February 8, 1962, issued its Order No. 242[10] which made three amendments to the regulations. Section 154.93, defining producers' rate schedules, was amended to prescribe automatic rejection of contracts containing indefinite price-changing clauses. The amendment reads:

> "*Provided further*, That any contract executed on or after April 2, 1962, containing price-changing provisions other than the permissible provisions set forth in the proviso next above [Order No. 232–A] shall be rejected."

Order No. 242 also amended §§ 157.14 and 157.25 of the regulations so as to prohibit the consideration of contracts containing the forbidden clauses in support of a pipeline's application for a certificate of convenience and necessity.

The cases now before us attack the validity of Orders Nos. 232, 232–A, and 242. With this background we turn to the procedural questions.

Court review of Commission orders is governed by § 19(b) of the Act,[11] which provides that a party to a proceeding "aggrieved" by a Commission order may obtain a review in the court of appeals "for any circuit wherein the natural-gas company to which the order relates is lo-

cated or has its principal place of business," or in the Court of Appeals for the District of Columbia Circuit. The Commission asserts that venue does not lie in the Tenth Circuit for consideration of the three petitions of Texaco, Inc., Nos. 6947, 7135, and 7217, because the petitioner is not located in, and does not have its principal place of business in, that circuit. Texaco is incorporated under Delaware law and allegedly has its principal place of business in Texas. Venue in the Tenth Circuit depends on the meaning to be given the word "located."

Texaco's petitions for review allege that its Tulsa Division has responsibility for Texaco's producing activities and operations in an area including Oklahoma and Kansas.[12] The Tulsa Division operations include "the negotiation of leases and exploration permits; geological and geophysical activities; the drilling of exploratory wells, and the development of productive areas; the payment of royalties and production taxes; the filing of state reports and the disposition of the production." In each case personnel of the Tulsa Division negotiated the contracts with the pipelines. That division supervises the performance of the contracts by Texaco, maintains records pertaining thereto, and receives payment for the gas sold. The certificate applications were made by the Tulsa Division.

The Commission asserts that the word "located" as used in § 19(b) means the same as "resides" and refers to the state of incorporation. Oddly enough, the extensive litigation over the Natural Gas Act has not produced an answer to this simple question. Perhaps the reason is that the point concerns venue rather than jurisdiction.[13] The Commission asserts a "long-established

9. 26 Fed.Reg. 9732, October 14, 1961.

10. 27 F.P.C. 339, 27 Fed.Reg. 1356, February 14, 1962. Rehearings denied 27 F.P.C. 666.

11. 15 U.S.C. § 717r(b).

12. Another of Texaco's seven producing department divisions is headquartered in Denver, Colorado, and has similar responsibilities for an area including Colorado, New Mexico, Utah, and Wyoming, all states of the Tenth Circuit.

13. Panhandle Eastern Pipe Line Co. v. Federal Power Commission, 324 U.S. 635, 638, 65 S.Ct. 821, 89 L.Ed. 1241.

understanding" of the Commission and the natural-gas companies that "located" refers to the state of incorporation, and cites an impressive list of cases brought in the Third Circuit on the basis of the incorporation of the natural-gas companies, which were parties thereto, in one of the states of the Third Circuit. Texaco counters with an equally impressive list of cases wherein review was had in a circuit in which the natural-gas company was not incorporated and did not have its principal place of business. As venue may be waived, we are not impressed with this approach.

In a long line of decisions, beginning with Shaw v. Quincy Mining Company, 145 U.S. 444, 450, 12 S.Ct. 935, 36 L.Ed. 768, the Supreme Court has held that the residence of a corporation within the meaning of venue statutes is only the state of incorporation. In Suttle, Administratrix, v. Reich Bros. Construction Co., 333 U.S. 163, 166–167, 68 S.Ct. 587, 92 L.Ed. 614, the Supreme Court reviewed these cases and said that Congress has revealed a similar understanding in the enactment of special venue statutes. The presumption is that Congress was aware of the applicable decisions, and its recognition of them, when it enacted the Natural Gas Act.[14]

The parties agree that the pertinent language of § 19(b) was taken from § 313(b) of the Federal Power Act.[15] The legislative history of that section shows that "is located" was substituted for "resides."[16] The Commission says that there is no explanation of the purpose of the change. In our opinion the change is significant and the deliberate substitution of words shows a congressional intent not to narrow the provision to the state of incorporation. If Congress had so intended, it would have retained the word "resides."

The Commission urges that, unless "is located" is equated with "resides," the insertion of the phrase "principal place of business" is but an exercise in redundancy violative of the rule that all terms of a statute must be given effect. We do not agree. Congress is presumed "to have used language in accordance with the common understanding."[17] "Located" means having physical presence or existence in a place.[18] A corporation has physical presence or existence in the state of incorporation and in a state where it conducts substantial operations. Granting that a corporation is located in the state in which it has its principal place of business, the overlap in provisions must be for the purpose of clarity. The fact of the overlap does not detract from the effect of the substitution of "is located" for "resides." We deem the change in phraseology to be more significant than the overlap.

14. Shapiro v. United States, 335 U.S. 1, 16, 68 S.Ct. 1375, 92 L.Ed. 1787. Cf. Public Service Company of New Mexico v. General Electric Company, 10 Cir., 315 F.2d 306; United States v. Sanders, 10 Cir., 145 F.2d 458, 461.

15. 16 U.S.C. § 825l(b).

16. The first version of what ultimately developed as § 313(b) of the Federal Power Act (Part III of the Public Utilities Holding Act of 1935, Part III, Act of August 26, 1935, c. 687, § 313(b), 49 Stat. 803, 854, 860), appeared in S. 1725, 74th Cong., 1st Sess. In its briefs the Commission says that this bill provided that a person aggrieved could obtain review of a Commission order in a court of appeals "for any circuit wherein such person resides or has his principal place of business," and that a revised bill, S. 2796, contained the venue provisions now found in § 313(b). The significant modifications are that the reference point for venue is the licensee or public utility rather than the petitioner, and that the words "is located" replace "resides."

17. United States v. Wurts, 303 U.S. 414, 417, 58 S.Ct. 637, 639, 82 L.Ed. 932.

18. Webster's New International Dictionary, 2d ed. (1959), Unabridged, defines "locate" as: "1. To designate the site or place of; * * *. 2. a. To set or establish in a particular spot or position; to station. b. To establish in a charge or office. * * *." The word "location" is defined as: "1. Act or process of locating (in various senses); fact or condition of being located, or of having position. * * *."

■■ This conclusion does not intend that the mere legal indicia of "doing business" will support venue under § 19(b). In Colorado Interstate Gas Co. v. Federal Power Commission, 10 Cir., 142 F.2d 943, 950–951,[19] we denied a motion to dismiss and held that the petitioners in that case had their principal places of business in Colorado, saying that the question was one "of fact to be determined in each particular case." The same principle applies here and the question of whether Texaco is located in the Tenth Circuit must be determined on the particular facts. The undenied allegations of Texaco are that it conducts extensive operations in the Tenth Circuit and has two of its seven production divisions therein. More importantly, in each of the cases the gas sold is produced in the Tenth Circuit and the performance of the contract occurs in the Tenth Circuit. As all matters concerned with the applications of Texaco which resulted in the orders here sought to be reviewed took place in the Tenth Circuit, Texaco is located in that circuit for the purpose of the venue provisions of § 19 (b).

The Commission has moved to dismiss cases Nos. 6947, 6973, 7002, 7135, and 7179 upon the ground that in each case the petitioner is not "aggrieved" within the requirement of § 19(b). The facts in these cases divide them into two groups which must be considered separately.

In the first group are cases Nos. 7002 and 7179.[20] Each of these seeks to review and set aside Order No. 242. That order was issued as a rule of general applicability and amended certain sections of the regulations.

In moving to dismiss these cases the Commission asserts that the Act vests no jurisdiction in the courts of appeals to review orders of the Commission amending its general rules and regulations. The petitioners counter by saying that reviewability is predicated on an invasion of legal rights and that such rights of the petitioners are directly affected by Order No. 242.

■ The Tenth Circuit is committed to the view that § 10 of the Administrative Procedures Act [21] is inapplicable to the review of Commission orders under the Natural Gas Act.[22] Accordingly, the right of review is governed entirely by § 19(b) of the Natural Gas Act. That section permits review on the petition of a party aggrieved. The query is when, and in what circumstances, is a party aggrieved.

■ Sales of gas by producers to pipelines are initiated by private contract and those contracts are subject to review by the Commission under statutory standards. No right exists in the seller to change a rate fixed by contract unless the contract itself recognizes a right to change the rate. An order of the Commission proscribing price-changing provisions is an interference with the right to contract and a denial of a substantive right. Without considering for the moment the question of the power of the Commission to interfere with such a substantive right, those to whom the right is denied are entitled to court review of such action to test whether the action is within the statutory powers of the Commission. The problem is how this review may be had under § 19(b).

An easy and quick method of reviewing orders which affect substantive rights

19. Affirmed, Colorado Interstate Gas Co. v. Federal Power Commission, 324 U.S. 581, 65 S.Ct. 829, 89 L.Ed. 1206; affirmed in part, reversed in part on other grounds, Colorado-Wyoming Gas Co. v. Federal Power Commission, 324 U.S. 626, 65 S.Ct. 850, 89 L.Ed. 1235.

20. No. 7179—Sun Oil Company v. Federal Power Commission—was originally filed in the Court of Appeals for the Dis-

trict of Columbia Circuit and was transferred to the Tenth Circuit pursuant to the provisions of 28 U.S.C. § 2112 because of the earlier petition filed in the Tenth Circuit by Pan American in No. 7002.

21. 5 U.S.C. § 1009.

22. Amerada Petroleum Corporation v. Federal Power Commission, 10 Cir., 231 F.2d 461, 465.

and which are of general applicability would aid the administration of the Act. The difficulty is that the Commission has construed § 19(b) so as to preclude any such expeditious review and the position of the Commission has been quite uniformly upheld by the courts.

 In seeking reviews of orders of general applicability the petitioners rely on the decisions in Columbia Broadcasting System, Inc., v. United States, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563, and United States v. Storer Broadcasting Co., 351 U.S. 192, 76 S.Ct. 763, 100 L.Ed. 1081, in which rules of general applicability affecting substantial rights were held reviewable under other statutes. The courts of appeals have not applied these decisions in determining rights to review under § 19(b). Without going into the distinctions and differences which have been stated, the controlling point has been that a person is not aggrieved by a general order and cannot complain until a personal right is impinged by a special order. The Tenth Circuit, in Amerada Petroleum Corporation v. Federal Power Commission, 10 Cir., 231 F.2d 461, declined to review orders issuing rules after the decision in Phillips Petroleum Co. v. Wisconsin, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035. In so holding it relied heavily on United Gas Pipe Line Co. v. Federal Power Commission, 86 U.S.App.D.C. 314, 181 F.2d 796, certiorari denied 340 U.S. 827, 71 S.Ct. 63, 95 L.Ed. 607, and that court's treatment of the Columbia Broadcasting case. More recently, the Fifth Circuit has sustained Commission motions to dismiss petitions seeking to review Order No. 232–A [23] and to review Order No. 242.[24] We accept these decisions as correct applications of § 19(b). Certainly the language of the statute is strained if review may be had of a negative order of general applicability by a party who

has not been, and may never be, affected by the order except in a theoretical manner. Accordingly, Nos. 7002 and 7179 must be dismissed on the ground that the petitioners are not aggrieved within the meaning of § 19(b).

 The second group of cases attacks special orders made under the authority of the mentioned general orders. In each instance the questioned decisions have granted the authority sought but provide that any application for a rate change under an impermissible price-changing clause will be rejected.

Nos. 6947, 6973, and 7135 concern applications for certificates of convenience and necessity covering gas sales by producers to pipelines. In Nos. 6947 and 7135 the same contract is presented, one for the sale by Texaco to Lone Star Gas Company of gas produced in the Carter-Knox Field, Stephens County, Oklahoma. In No. 6973 the sale is by Pan American to Mountain Fuel Supply Company of gas from the Middle Mountain Unit Area, Sweetwater County, Wyoming. Each contract was made or amended after the effective date of Order No. 232–A and contains indefinite price-changing clauses. The Commission granted temporary authorizations in Nos. 6947 and 6973. A permanent certificate was granted in No. 7135 for the same service as that presented in No. 6947.

In each of the three cases the order of the Commission contains this provision in substantially identical language:

"Further, in the event that any of the documents comprising the listed rate schedules and supplements was executed on or after April 3, 1961 and contains provisions, either therein or by adoption of the terms and provisions of other agreements, for a change in rate other than those permitted by Section 154.93 of the Com-

---

23. Sun Oil Company v. Federal Power Commission, 5 Cir., 304 F.2d 293, certiorari denied 371 U.S. 861, 83 S.Ct. 118, 9 L.Ed.2d 99.

24. Hunt Oil Company v. Federal Power Commission, 5 Cir., 306 F.2d 878. The

Third Circuit took similar action in an unreported case, Shell Oil Company v. Federal Power Commission, case No. 14058, decided July 17, 1962.

mission's Regulations, such rate change provisions shall be inoperative and of no effect at law and any tendered rate change under such provisions will be rejected."

The petitions for review in these cases are directed against the quoted provision of the respective orders. The Commission has moved to dismiss each on the ground that the petitioner is not a party aggrieved.

On the one hand the petitioners say that Order No. 232–A, as implemented by the orders containing the provision in question, has effectively nullified indefinite price-changing clauses and thus deprived petitioners of contract rights assured to them by the Act and by the Mobile decision. On the other hand the Commission urges that the orders sought to be reviewed in these cases do not themselves adversely affect the petitioners but only affect their rights adversely on the contingency of future administrative action.

In Sunray Mid-Continent Oil Company v. Federal Power Commission, 10 Cir., 270 F.2d 404, 407, the Tenth Circuit dismissed, on Commission motion, a petition to review a Commission order authorizing temporary service and providing that service once instituted could not be discontinued without Commission permission. Objection was made to the provision for termination of service. The dismissal was on the ground that the petitioner had not sought to terminate and, hence, was not aggrieved.[25] In Sun Oil Company v. Federal Power Commission, 5 Cir., 304 F.2d 290, certiorari denied 371 U.S. 861, 83 S.Ct. 118, 9 L. Ed.2d 99, the Fifth Circuit was confronted with a situation comparable to the one here presented. Objection was

made to the inclusion in an authorization for temporary service of a provision, similar to that appearing in Nos. 6947, 6973, and 7135, for the rejection of rate increases covered by impermissible price-changing clauses. The court sustained the Commission motion to dismiss saying that the clause attacked was interlocutory and not reviewable.

We conclude that the provisions of the orders attacked in Nos. 6947, 6973, and 7135 do not adversely affect any right of the petitioners and, hence, the petitioners are not aggrieved within the requirement of § 19(b). That conclusion does not mean that Orders Nos. 232, 232–A, and 242 are valid or that contracts executed after the effective date of those orders are "inoperative" or "of no effect at law" when they contain indefinite price-changing clauses.

 This brings us to No. 7303, in which the Commission has interposed no procedural objections to the petition for review, and to No. 7217 in which we hold that the motion to dismiss must be denied. In each of these the Commission rejected an application for a certificate of convenience and necessity on the ground that the underlying contract contained pricing provisions not permissible under § 154.93, as amended by Order No. 232–A.[26] The rejection was based on Order No. 242. As we have heretofore stated, that order provides for the rejection of applications for certificates when the underlying contract contains price-changing clauses forbidden by Order No. 232–A.

Our difficulty is immediately apparent. The summary rejection of the Texaco and Pan American contracts without a hearing deprives the court of any record upon

25. The court, quoting from Rochester Telephone Corp. v. United States, 307 U.S. 125, 130, 59 S.Ct. 754, 757, 83 L.Ed. 1147, said: " * * * the order sought to be reviewed does not of itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action."

26. No. 7217 relates to an application by Texaco for a certificate covering a sale

by it to Natural Gas Pipeline Company of America of gas produced in the Camrick Southeast Field, Beaver County, Oklahoma. The application in No. 7303 is based on a contract for the sale by Pan American to Colorado Interstate Gas Company of gas produced in the Beaver Creek Field, Fremont County, Wyoming. Each contract contains indefinite price-changing clauses.

which the rejection may be sustained, other than the general orders which are attacked. As we have noted above, the Commission has successfully maintained that these general orders are not subject to direct court review. This bootstrap operation of the Commission, in practical effect, circumvents court review of the basic question—the propriety of indefinite price-changing clauses.

Neither sympathy for the administrative difficulties of the Commission nor recognition of its expertise in the regulation of those subject to the Natural Gas Act justifies disregard of the statutes under which the Commission operates. We find no statutory authorization for the Commission actions here attacked.

■■■ Section 16 of the Act [27] empowers the Commission to make rules and regulations to carry out the provisions of the Act but that section is not a source of power to regulate in conflict with substantive provisions of the Act.[28] The Commission asserts that the necessary authority flows from §§ 4, 5, and 7.[29]

■■■ Sections 4 and 5 relate to rates and charges and give the Commission power to modify contracts—not to make contracts. The power to modify can be exercised only after hearing. The controlling standard is what is just and reasonable.[30]

Section 7(c) provides that no natural-gas company "shall engage in the transportation or sale of natural gas" without a certificate of public convenience and necessity and with immaterial exceptions requires the Commission to set "for hearing" applications to obtain such certificates. Section 7(e) states that the certificate will issue if the Commission finds that the proposed service "is or will be required by the present or future public convenience and necessity."

The Commission held no hearings relative to the promulgation of Orders Nos. 232, 232–A, or 242. Nevertheless, the Commission made findings allegedly justifying such orders.[31] In summary the Commission found that indefinite price-changing clauses are "undesirable, unnecessary and incompatible with the

27. 15 U.S.C. § 717o.

28. Cf. Federal Power Commission v. Panhandle Eastern Pipe Line Co., 337 U.S. 498, 508, 69 S.Ct. 1251, 93 L.Ed. 1499. See also Willmut Gas & Oil Company v. Federal Power Commission, 111 U.S.App. D.C. 49, 294 F.2d 245, 250, certiorari denied 368 U.S. 975, 82 S.Ct. 477, 7 L. Ed.2d 437, saying that § 16 does not permit the Commission to promulgate rules inconsistent with the Act and thus result in a legislative change.

29. 15 U.S.C. §§ 717c, 717d, and 717f.

30. Section 4, subparagraph (a), provides that all rates and charges must be just and reasonable. Subparagraph (c) requires the filing of schedules showing all rates and charges "together with all contracts which in any manner affect or relate to such rates, charges, * * *." Subparagraph (d) forbids a change in a rate or charge without 30-days' notice to the Commission. Subparagraph (e) provides that when a new rate schedule is filed, the Commission, either on complaint or on its own initiative, but on reasonable notice may "enter upon a hearing concerning the lawfulness" thereof; that the Commission may suspend a new schedule for five months; that "after full hearings, * * * the Commission may make such orders with reference thereto as would be proper" in a § 5 proceeding; and that if the proceedings have not been concluded and an order entered at the end of the suspension period, the proposed change shall go into effect but the Commission may require a bond for refund of overpayments.
 So far as material, § 5 provides that when the Commission, "after a hearing," on its own motion or on complaint, finds that a "rate, charge, or classification" or "any rule, regulation, practice, or contract" having an effect thereon, is "unjust, unreasonable, unduly discriminatory, or preferential," the Commission shall determine and fix by order "the just and reasonable rate, charge, classification, rule, regulation, practice, or contract."

31. These findings are reported for Order No. 232, at 25 F.P.C. 380, 26 Fed.Reg. 1983; for Order No. 232–A at 25 F.P.C. 609, 26 Fed.Reg. 2850; and for Order No. 242 at 27 F.P.C. 339–340, 27 Fed. Reg. 1356.

public interest;"[32] that such contract provisions "have resulted in a flood of almost simultaneous filings" which "bear no apparent relationship to the economic requirements of the producers who file them;" and that such filings "have created a significant portion of the administrative burdens under which this Commission is laboring today."[33]

These findings are not made in the language of the statutory standards of "just and reasonable" and "public convenience and necessity." The public interest must be related to and tested by these standards. Although the Commission is the guardian of the public interest in the administration of the Act, the Commission may not substitute its standards for the statutory standards. Additionally, if we should accept the legal sufficiency of the Commission's findings, we have no way of determining the factual basis for those findings because we have before us no record of facts to sustain them.[34] In the cases at bar the Commission has held no adversary hearings at which facts have been adduced to sustain findings which, on the basis of statutory standards, support the decisions reached. No amount of administrative expertise can supply these deficiencies.

The Commission vigorously asserts the validity of Orders Nos. 232, 232–A, and 242 as orders of general application within Commission power which are desirable and preferable to a case-by-case approach to the regulatory problems. At the same time the Commission with equal vigor says that the orders are reviewable only on a case-by-case basis after rejection of a particular contract containing clauses impermissible under the general orders. Such a divided approach to a basic and difficult problem cannot throw a cloak of conclusive validity over general orders. If the general orders are not themselves reviewable and if special orders based thereon are not reviewable when the result falls short of the denial of a presently asserted substantive right, then those general orders are only of an advisory nature and neither forbid the inclusion in contracts of indefinite price-changing clauses nor justify the rejection, on the sole ground of violation of general regulations, of contracts containing such clauses.

■ The Commission argues that in making the challenged orders it was "legislating interstitially, as contemplated by the Act." Although the "filling in the interstices of the Act" may be performed through a "quasi-legislative promulgation of rules,"[35] administrative officers must keep within the bounds of their administrative powers,[36] which are limited by the scope of the statute.[37] In Addison v. Holly Hill Fruit Products, Inc., 322 U.S. 607, 617–618, 64 S.Ct. 1215, 88 L. Ed. 1488, the Supreme Court said:

" * * * not infrequently administration reveals gaps or inadequacies of one sort or another that may call for amendatory legislation. But it is no warrant for extending a statute that experience may disclose that it should have been made more comprehensive. * * * For the ultimate question is what has Congress commanded * * *."

32. 25 F.P.C. 380, 26 Fed.Reg. 1983.

33. 27 F.P.C. 340, 27 Fed.Reg. 1357.

34. The Commission's reliance on its decision in the case of The Pure Oil Company, 25 F.P.C. 383, is not helpful. The Commission there held that indefinite escalation provisions are, in general, contrary to the public interest. The Commission order was affirmed on review, Pure Oil Company v. Federal Power Commission, 7 Cir., 299 F.2d 370, but the court did not discuss the problems with which we are concerned. In any event a record made in that proceeding is not dispositive of the issues now under consideration.

35. Securities & Exchange Commission v. Chenery Corporation, 332 U.S. 194, 202, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995.

36. American Telephone & Telegraph Co. v. United States, 299 U.S. 232, 236, 57 S.Ct. 170, 81 L.Ed. 142.

37. Federal Communications Commission v. American Broadcasting Co., Inc., 347 U.S. 284, 290, 74 S.Ct. 593, 98 L.Ed. 699.

■ Under the Natural Gas Act and the Mobile decision, rates and charges for the sale of gas are initially prescribed by private contract and may be increased only in accordance with contract provisions. Contracts establishing such rates and charges and providing for changes therein may be modified by the Commission only after hearing and then only by the application of the standards of "just and reasonable" and "public convenience and necessity." The summary rejection of applications based on contracts containing price-changing clauses, of which the Commission does not approve, deprives the natural-gas companies of their statutory right to a hearing, ignores the statutory standards, and precludes the possibility of any effective judicial review.

Perhaps in some regards the Commission may "legislate interstitially" but in our opinion it may not do so when its action results in the denial of substantive rights. The horrendous consequences of such actions are well described in Hunt v. Federal Power Commission, 5 Cir., 306 F.2d 334, 342–345, and need not be repeated here. Within its constitutional powers Congress may legislate on substantive rights without hearings and findings. The Commission has attempted to usurp that congressional power. No claim of administrative need or of frustration in the performance of its duties can make up for the lack of statutory authority.

■ We are deciding only the cases before us. The problems of area pricing are not presented here. In our opinion Order No. 242 is void and without effect. Orders Nos. 232 and 232–A are in a different category. As advisory declarations of Commission policy they determine no rights. At the same time those orders do not, and cannot, invalidate either retroactively or prospectively price-changing clauses in a gas-sale contract between a producer and a pipeline and are no justification for the rejection, without hearing, of a rate or charge based on such clauses.

For the reasons stated the motions to dismiss Nos. 6947, 6973, 7002, 7135, and 7179 are sustained and those cases are dismissed. The motion to dismiss No. 7217 is denied. The orders of the Commission in Nos. 7217 and 7303 are set aside and held for naught and the cases are remanded for further consideration in accordance with the views expressed in this opinion.