PAN AMERICAN PETROLEUM COR-
PORATION, Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent.

No. 7303.

United States Court of Appeals
Tenth Circuit.

Oct. 18, 1965.

Carroll L. Gilliam, Washington, D. C.
(J. P. Hammond, William H. Emerson,

Tulsa, Thomas J. Files, Denver, Colo., Philip R. Ehrenkranz, and Grove, Paglin, Jaskiewicz, Sells, Gilliam & Putbrese, Washington, D. C., with him on the brief), for petitioner.

Peter H. Schiff, Washington, D. C. (Richard A. Solomon, Gen. Counsel, Howard E. Wahrenbrock, Sol., Robert L. Russell, Asst. Gen. Counsel, and Herzel H. E. Plaine, Atty., F. P. C., with him on the brief), for respondent.

Before LEWIS, BREITENSTEIN and HILL, Circuit Judges.

BREITENSTEIN, Circuit Judge.

In Texaco, Inc., v. Federal Power Commission, 10 Cir., 317 F.2d 796, we held that the Federal Power Commission, acting under its general rule-making powers, could not proscribe certain pricing provisions in the contracts of independent producers of natural gas; and we set aside Commission orders rejecting two applications for certificates of convenience and necessity, one by Texaco and one by Pan American. On certiorari the Supreme Court reversed,[1] holding that the Texaco petition should be dismissed for lack of venue and that the Commission acted within its statutory authority in adopting the challenged regulations under its rule-making powers. The Supreme Court remanded the case to this court "for further proceedings in conformity with the opinion of this Court." On motion of the Commission we dismissed the Texaco petition. See Texaco, Inc., v. Federal Power Commission, 10 Cir., 337 F.2d 253. The remaining issue is the Pan American contention that, insofar as the contract here presented is concerned, the regulations are invalid because they are not rationally related to the regulatory purposes of the Natural Gas Act.[2]

The Regulations under the Natural Gas Act require independent producers subject to the Commission's jurisdiction to file their sale contracts as rate schedules.[3] Section 154.93, as amended by Commission Orders Numbers 232, 232A, and 242,[4] permits certain price-changing provisions in such contracts, prohibits all others, and provides that contracts which are executed after April 2, 1962, and which contain impermissible price-changing provisions shall be rejected.

The Pan American certificate application is based on a contract for the sale by Pan American to Colorado Interstate Gas Company of gas produced in the Beaver Creek Field, Fremont County, Wyoming. The contract calls for a 17.5 cent per MCF rate for the first five years with increases of one cent per MCF at the end of each of three subsequent five-year periods. The contract also contains what Pan American calls a price renegotiation clause which provides that for each five-year period after 1983 the price "shall be the fair market price established as of the beginning of each such period but in no event shall be less than 20.5 cents." The parties are required to meet to establish such fair market price. In establishing that price "the parties shall consider along with other relevant factors, quality, quantity, delivery pressure and delivery point, and the prices other major pipeline companies are paying for gas in the general area under agreements which at that time have been recently negotiated or renegotiated." The price renegotiation provisions are impermissible under § 154.93 and caused the summary rejection of the Pan American contract.

The Commission insists that all issues of the validity of the challenged regulations, including reasonableness, were determined by the Supreme Court in Federal Power Commission v. Texaco, Inc., 377 U.S. 33, 84 S.Ct. 1105, 12 L.Ed.2d 112. We do not so read that decision.

---

1. Federal Power Commission v. Texaco, Inc., 377 U.S. 33, 84 S.Ct. 1105, 12 L. Ed.2d 112.

2. 15 U.S.C. § 717 et seq.

3. Section 154.91, as amended, 18 C.F.R. (Cum.Supp.1965) § 154.91 et seq.

4. 25 F.P.C. 379, 609, 26 Fed.Reg. 1983, 2850, and 27 F.P.C. 339, 27 Fed.Reg. 1356.

It did not discuss the reasonableness of those regulations, probably because the posture of the case presented did not require it to do so. A decision upholding the propriety of the procedures followed does not necessarily mean that the result of the procedures is valid.

■ The Commission also points out that the decision in Superior Oil Co. v. Federal Power Commission, 9 Cir., 322 F.2d 601, upheld the reasonableness of the regulations and the Supreme Court denied certiorari, 377 U.S. 922, 84 S.Ct. 1219, 12 L.Ed.2d 215. We do not consider the action of the Supreme Court in the Superior case as determinative of the issue here presented. Denial of certiorari "imports no expression of opinion upon the merits of the case." [5] Additionally the Superior case concerned a contract containing a favored-nation type of escalation clause.[6] We have here a different type of escalation provision.

Certain it is that neither the Supreme Court in Texaco nor the Ninth Circuit in Superior considered whether the proscription of an escalation clause such as presented here is a reasonable exercise by the Commission of its regulatory powers under the Act. We believed that under the remand it was incumbent on us to resolve this narrow issue and we required the Commission to file the records compiled in the rule-making procedures which resulted in Orders Numbers 232, 232A, and 242.[7] This has been done and the parties have reproduced a joint appendix containing material portions of those records.

■ In its Order No. 232 the Commission recognized the propriety and desirability of long-term contracts for the sale of natural gas by producers to pipeline companies and held that such contracts containing "indefinite escalation clauses" contributed to instability and uncertainty of price and were contrary to the public interest. Escalation clauses are common in long-term contracts for the sale of gas because (1) a natural gas company is bound by its contract and may not unilaterally file for increased rates [8] and (2) a producer should have a contractual right to protect against the unforeseeable economic conditions of the future. These clauses take many forms such as two-party favored nation, three-party favored nation, spiral escalation, periodic escalation, redetermination, and renegotiation.[9] We need concern ourselves only with the distinctions between the last two. Redetermination clauses generally provide for an upward adjustment in price at specified times to reflect the average of the highest prices then paid by buyers to other suppliers for gas delivered under substantially similar terms and conditions. Renegotiation clauses generally provide for agreement by the buyer and seller on a price to be effective at a certain time and generally set forth the factors to be considered by the parties in agreeing on the renegotiated price.

In the rule-making proceedings before Order No. 232 was entered some of the participants urged the approval of renegotiation clauses. One of the commissioners dissented from that order "insofar as it renders void and inoperative provisions in producer contracts permitting price changes arrived at through negotiation or arbitration after a period of five years from the date of the contract." [10]

Objections to Order No. 232 resulted in its amendment by Order No. 232A. Therein the Commission found that cer-

5. United States v. Carver, 260 U.S. 482, 490, 43 S.Ct. 181, 67 L.Ed. 361.

6. Superior Oil Co. v. Federal Power Commission, 9 Cir., 322 F.2d 601, 603–604.

7. These were Docket Nos. R–137, R–153, and R–203.

8. United Gas Pipe Line Co. v. Mobile Gas Service Corp., 350 U.S. 332, 76 S.

Ct. 373, 100 L.Ed. 373; and United Gas Pipe Line Co. v. Memphis Light, Gas and Water Division, 358 U.S. 103, 79 S.Ct. 194, 3 L.Ed.2d 153.

9. For a description of various types of escalation clauses see The Pure Oil Company, 25 F.P.C. 383, 388, note 3.

10. 25 F.P.C. 379, 381.

tain indefinite escalation provisions, including "unlimited redetermination or renegotiation" provisions, were contrary to the public interest. Section 154.93 was amended to prohibit all price change provisions except (1) changes to reimburse a seller for certain taxes, (2) changes of a price to a specific amount at a definite date, and (3) change of a price at a definite date by price-redetermination based on in-line rates.[11] The commissioner who had dissented in part from Order No. 232 noted his adherence to the views there expressed.[12]

■■■ Pan American argues that the Commission in the exercise of its rule-making powers cannot act on substantive questions "without evidentiary support and without rational, factual bases for expressed reasons for issuance of rules" and says that such factual bases are lacking. We agree that a regulation is not rationally related to the regulatory purpose of a statute just because an agency says so and that reasonableness is not a purely legal question. Some factual basis must appear and we believe that the record before us affords that basis. The facts relating to escalation clauses are set forth by the producers, the pipelines, and the representatives of the consumer interests. True the presentations do not take form of an adjudicatory type hearing but the Supreme Court has said that is not necessary. On the showing made

the general proscription of indefinite price escalation clauses is reasonable.

Pan American pin points its argument by claiming the insufficiency of the record to support the prohibition of renegotiation clauses. The record shows that this type of clause was the subject of comment and that one commissioner dissented from Orders Nos. 232 and 232A because of the failure to approve this type clause. Indeed we are impressed with the value of such a clause. Parties may renegotiate a contract. The difference between voluntary and compulsory renegotiation is illusory because renegotiation does not require agreement.

■■■ We may not substitute our views as to the reasonableness of a regulation for those of the Commission.[13] In its Order No. 232A the Commission approved price-redetermination clauses based on so-called in-line prices. This conforms with the "hold the line" admonition found in Atlantic Refining Co. v. Public Service Commission of New York, 360 U.S. 378, 392, 79 S.Ct. 1246, 3 L.Ed.2d 1312. The permission of such redetermination clauses does not preclude the denial of renegotiation clauses which require the application of other factors. We conclude that the proscription of the renegotiation clause presented here has a rational relationship to the regulatory purposes of the Act and is valid.

---

11. The amendment added a proviso to § 154.93 which reads: *"Provided*, That in contracts executed on or after April 3, 1961, for the sale or transportation of natural gas subject to the jurisdiction of the Commission, any provision for a change of price other than the following provisions shall be inoperative and of no effect at law; the permissible provisions for a change in price are:
   (a) Provisions that change a price in order to reimburse the seller for all or any part of the changes in production, severance, or gathering taxes levied upon the seller;
   (b) Provisions that change a price to a specific amount at a definite date; and
   (c) Provisions that, once in five-year contract periods during which there is no

provision for a change in price to a specific amount (paragraph (b) of this section), change a price at a definite date by a price-redetermination based upon and not higher than a producer rate or producer rates which are subject to the jurisdiction of the Commission, are not in issue in suspension or certificate proceedings, and, are in the area of the price in question."

12. 25 F.P.C. 609, 610.

13. American Telephone & Telegraph Co. v. United States, 299 U.S. 232, 236–237, 57 S.Ct. 170, 81 L.Ed. 142. See also American Trucking Associations, Inc. v. United States, 344 U.S. 298, 314, 73 S.Ct. 307, 97 L.Ed. 337.

■ Order No. 242 amends § 154.93 to provide for the rejection of any contract "containing price-changing provisions other than the permissible provisions" set forth in Order No. 232A. Under this provision the Pan American contract with which we are concerned was summarily rejected by a letter order. In Amax Petroleum Corporation v. Federal Power Commission, 10 Cir., 350 F.2d 92, we said that the Commission "as a matter of expertise, may draw upon their experience in determining the ground rules for their own investigation" but may not "under the guise of expertise, deny a specific right." The same principles apply here. The Commission may fix its own procedural ground rules but may not apply them to deny a substantive right.

■ If the effect of the questioned orders is to deprive a petitioner of a substantive right, the way is left open for the protection of that right. The Commission's Rules of Practice and Procedure, § 1.7(b) [14] permit a request for a rule waiver in a rate filing. This opens the way for a party who claims aggrievement by a regulation to obtain a review of its applicability to his particular situation.[15] In the case before us Pan American did not request a rule waiver. Consequently, it is in no position to object to the summary disposition of its application.

■ Finally, Pan American argues that the questioned regulations violate the due process provisions of the Fifth Amendment. As we understand the contention it is that both procedural and substantive due process are lacking because the findings of the Commission on which the orders were based do not apply the statutory standards calling for "just and reasonable" rates.[16] The Commission findings are in terms of public interest and administrative burdens.[17] Pan American says that substantive due process forbids rule making that contravenes the statutory standards and that procedural due process requires a finding, based on evidence, that the substantive requirements have been met. We believe that the Supreme Court answered the argument when it said: "The present regulations do not pass on the merits of any rate structure nor on the merits of a certificate of public convenience and necessity; they merely prescribe qualifications for applicants." [18] If an applicant believes that the prescribed qualifications deprive it of the right to a just and reasonable rate, it may apply for a waiver of the rules.

The petition for review is denied.

---

14. 18 C.F.R. (Cum.Supp.1965) 1.7(b).

15. See Federal Power Commission v. Texaco, Inc., 377 U.S. 33, 40, 84 S.Ct. 1105, 12 L.Ed.2d 112; and United States v. Storer Broadcasting Co., 351 U.S. 192, 205, 76 S,Ct. 763, 100 L.Ed. 1081.

16. See Section 4(a) of the Act. 15 U.S.C. § 717c(a).

17. See 25 F.P.C. 380 and 27 F.P.C. 340.

18. 377 U.S. at 42, 84 S.Ct. at 1111.