**TRANSCONTINENTAL GAS PIPE LINE CORPORATION, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

No. 73–1626.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 25, 1974.

Decided Sept. 2, 1975.

19. *Id.*

Thomas F. Ryan, Jr., Washington, D. C., with whom James M. Broadstone, Washington, D. C., was on the brief for petitioner.

Charles E. Bullock, Atty., F. P. C. with whom Leo E. Forquer, Gen. Counsel and George McHenry, Jr., Sol., Washington, D. C., were on the brief for respondent.

Before LEVENTHAL and WILKEY, *Circuit Judges,* and RICHEY,* *United States District Judge* for the District Court of the District of Columbia.

CHARLES R. RICHEY, *District Judge:*

## I. INTRODUCTION

This appeal grows out of a series of orders of the Federal Power Commission ("Commission") which date from October 2, 1970, in which the Commission, as part of its efforts to alleviate the natural gas shortage, has authorized and encouraged natural gas pipeline companies to enter into advance payment agreements with natural gas producers. The Commission authorized that pipeline companies may, under certain conditions, make advance payments to producers for gas to be de- livered at a future date. These advance payments may be included in the rate base which the pipeline companies use to calculate the prices which consumers will be charged for gas. The Commission authorized advance payments in order to provide gas producers with the necessary investment capital to finance develop- ment and production of natural gas. From an economic standpoint, pipeline companies are induced to make such ad- vance payments since inclusion of the payment in their rate base shifts the cost of the payments to the pipeline's custom- ers, the natural gas consumers.

## II. FACTS AND ISSUES PRESENTED

On December 29, 1972, the Federal Power Commission issued Order No. 465 entitled *Order Amending Regulations Under the Natural Gas Act, Uniform Systems of Accounts for Class A and Class B Natural Gas Companies and An- nual Report Form No. 2,* ("Order No. 465"). The parties disagree about whether this Order communicated to natural gas pipeline companies that ad- vance payments, once nonrecoverable, would not remain in the pipeline's rate base. The Commission claims that the Order itself indicated that nonrecovera- ble advance payments must be removed from the rate base. Petitioner herein disagrees.

Petitioner Transcontinental Gas Pipe Line Corporation ("Transco") did *not* ap- ply for rehearing of Order No. 465. However, three other timely applications for rehearing were filed, and on Febru- ary 27, 1973, the Commission issued an *Order of Clarification and Denial of Rehearing or Modification* ("Order of Clarification") which made the rate base treatment of nonrecoverable advance payments clear.

Claiming that the Order had in fact gone beyond a mere clarification of Or- der No. 465, Transco filed, on March 29, an application for rehearing of the Order

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

of Clarification. On April 26, the Commission found Transco's claim totally without merit and denied the application for rehearing ("Order Denying Rehearing"). Thereafter, on June 4, Transco filed in this Court a petition for review of the Order of Clarification and the Order Denying Rehearing.

The Commission, on July 30, moved to dismiss Transco's petition for review on the grounds that Transco failed to comply with the procedural requirements for judicial review of Commission orders set forth in Section 19 of the Natural Gas Act, 15 U.S.C. § 717r; and that Transco is not a "party aggrieved" by the issuance of the Commission orders within the meaning of that act. This motion to dismiss is now before the Court.

The substantive issue raised by that application and this appeal is whether the Commission's exclusion from rate base of nonrecoverable advances which are being amortized to cost of service as an expense is in violation of the Constitution and the Natural Gas Act.

## III. DISCUSSION

A. *Transco's application for rehearing was timely filed since it was filed within 30 days following the Order of Clarification, and since the intent of the Commission to establish rate base treatment for nonrecoverable advance payments was not plain prior to publication of the Order of Clarification.*

Order No. 465 revised the Commission's rules regarding the rate and accounting treatment of advance payments made by pipelines to producers.[1] The Order of Clarification stated that advances must be removed from rate base when they are recognized as nonre-

coverable. Transco claims that, in this regard, the clarification went beyond the provisions of Order No. 465, and asserts that the unamortized portion of nonrecoverable advance payments which otherwise meets the criteria for permissible advance payments should be allowed to remain in rate base. The provision of Order No. 465 regarding nonrecoverable advance payments is as follows:

H. If the recipient of an advance is unable to repay it in full, through no fault of the pipeline or contractual provisions, in gas or other assets, the unpaid or nonrecoverable portion must be credited to this account [Account 166] at the time such amount is recognized as nonrecoverable. Nonrecoverable advances significant in amount must be eliminated within 5 years from the date of determination as nonrecoverable by either a charge to account 435, Extraordinary Deductions, or when authorized by the Commission, by a transfer to account 186, Miscellaneous Deferred Debits, and amortization to account 813, Miscellaneous Supply Expenses. Nonrecoverable advances insignificant in amount should be charged directly to account 813 in the year recognized as nonrecoverable.

The summarization of the above in the Commission's Order of Clarification which precipitated the present controversy is as follows:

Paragraph H then provides that the amounts of nonrecoverable advances shall be charged off below-the-line, as a non cost-of-service item in Account 435 or when authorized by the Commission, charged to Account 186 for amortization to Account 813 as a cost-of-service item over a five year period. However, as noted above, rate base

---

1. The advance payments program, whereby interstate pipelines were encouraged to make advance payments for gas to producers, was designed to combat the natural gas shortage by increasing capital available to producers in hopes that such increased capital would lead

to increased exploration. For that reason, the Commission amended its regulations on an experimental basis to allow pipelines to include advance payments in rate base and thus earn a return on monies so invested. Order No. 465 provided for continuation of that program.

treatment ceases at the time the advance is recognized as nonrecoverable.

Neither party questions the fact that Order No. 465 mandates the removal of recognized nonrecoverable advance payments from account 166. The controversy arises as to what happens to nonrecoverable advances *after* they are removed from account 166. It is clear that the amounts will then be charged either to account 435, Extraordinary Deductions or, with Commission authorization, be transferred to account 186, Miscellaneous Deferred Debits, and amortized to account 813, Other Gas Expenses. However, Transco, contrary to the Commission, maintains that the advances can *remain* in rate base while being disposed of by one of these methods.

Both parties agree that account 435 is a "below the line" account which, by definition, normally is not included in rate base. Transco, however, analogizes this situation to the treatment of account 426, another "below the line" account which is not *necessarily* excluded from rate base. Transco proceeds to argue that the instant situation regarding account 435 should, because there is no statement to the contrary, also be an exception to the "below the line" account exclusion from the rate base rule.

■ We think that there is some merit in the Commission's argument that the Commission, in its note concerning account 426 and similarly in accounts 415 and 416, merely left open the option of including *those particular* accounts in rate base should circumstances ever arise which would warrant such treatment.[2] Based on the overall scheme of the Commission's Uniform System of Accounts and the unequivocal language of the Commission's notes which limits their application to the particular accounts that they follow, the absence of a similar ex-

planatory note after account 435 would lead to a conclusion contrary to Transco's argument: that account 435, as a "below the line" account, is excluded from rate base.

The Commission also asserts that, historically, the removal of nonrecoverable advances from account 166 has consistently been interpreted as removal from rate base. Although, in fact, the Commission has ruled on the issue only *once* prior to the instant case, that ruling is consistent with and supportive of its present ruling. The predecessor to Order No. 465, Order No. 441, 46 FPC 1178, 1182 (1971), contained a paragraph virtually identical to paragraph H of Order No. 465. Interpreting Order No. 441, the Commission, in its *Order of Clarification and Denial of Modification,* 47 FPC 57 (1972), stated: "There is no provision for the inclusion in rate base of amounts that must be eliminated from account 166." 47 FPC at 58.

In light of this prior interpretation of language virtually identical to paragraph H of Order No. 465, it appears that, had the Commission intended a change in the policy of non-rate base treatment of nonrecoverable advance payments, it would have used language different from its prior Order No. 441. Since it did not do so, a change in policy is not indicated.

■ However, while a reader who is closely familiar with FPC accounting practices may have deduced from the language in Order No. 465 the FPC's intent to exclude nonrecoverable advance payments from the rate base, we do not feel that this Court's jurisdiction depends upon that determination. Rather, we think that where the intent of the Commission is not plain from its order and can only be determined by reference to similar orders in other proceedings, a timely attack on a subsequent order in

---

2. Commission's note following account 426 and similarly accounts 415 and 416 states: "Note: The classification of expenses as nonoperating and their inclusion in *this* account is

for accounting purposes. It does not *preclude* Commission *consideration* of proof to the contrary for ratemaking or other purposes." 18 C.F.R. Part 204 (emphasis added).

which the Commission's intent is made clear meets the procedural requirements for judicial review under Section 19(a) of the Natural Gas Act, 15 U.S.C. § 717r(a).

 In this case, the intent of the Commission was not so clear in Order No. 465 that this Court must dismiss an appeal from the Order of Clarification, which clearly manifested the Commission's intention with respect to rate base treatment of nonrecoverable advance payments. For this reason, we must deny the Commission's motion to dismiss for lack of jurisdiction.

B. *Neither the Constitution, the Natural Gas Act, nor this Court's prior decisions on advance payments require that nonrecoverable advance payments be permitted rate base treatment.*

The effect of Order No. 465, as clarified by the Commission, is that nonrecoverable advance payments could, when authorized by the Commission, be amortized, i. e. "written off", as a cost-of-service item in a rate case. That is, the annual amount being amortized is included in the cost-of-service as an expense and is recovered from rate payments by customers. At the same time, any such nonrecoverable advance payment must be removed from the rate base; i. e., as Transco views it, the pipeline company is not allowed to earn a return on this invested amount while it is being amortized.

Transco argues that if costs are allowed in cost-of-service, then such costs are recognized as prudently incurred. Otherwise, the costs would be disallowed entirely and the stockholders of the utility would be required to absorb them. Thus, by allowing nonrecoverable advance payments to be amortized as a cost-of-service, the Commission has effectively conceded that such advance payments were prudently made. Indeed, the specific situation which the Commission postulates in its Order of Clarification, i. e. an advance payment which becomes unrecoverable "through no fault of the pipeline or contractual provisions"

(suggesting bankruptcy or some other legal impediment which the pipeline could not have reasonably foreseen), presents an *a fortiori* case of a reasonable and prudent advance payment. Nevertheless, the Commission determined that the pipeline will be precluded from earning a return on this prudent investment. In other words, Transco argues, the Commission determined on a "policy" basis that it will give the pipeline "half a loaf"; it will allow the gradual recoupment of the investment principal, but it will require the stockholders to absorb the carrying costs of the prudent investment during the years that the investment is being recovered. Transco concludes that this is confiscatory under the due process clause of the Constitution and unlawful under the Natural Gas Act. It is no different in principle, Transco argues, than if the Commission were to allow depreciation of gas plants to be recovered in cost of service and at the same time refused to allow a return on the investment in gas plants—an approach which would soon put the pipeline in bankruptcy.

 It is well settled that to deprive public utility investors of a return on capital currently dedicated to public use constitutes an unconstitutional confiscation of property. *See, e. g., West Ohio Gas Co.* v. *Public Utilities Comm'n,* 294 U.S. 63, 55 S.Ct. 316, 79 L.Ed. 761 (1934); *United Railways* v. *West,* 280 U.S. 234, 50 S.Ct. 123, 74 L.Ed. 390 (1929); *Bluefield Co.* v. *Public Service Comm'n,* 262 U.S. 679, 43 S.Ct. 675, 67 L.Ed. 1176 (1922); *Galveston Elec. Co.* v. *Galveston,* 258 U.S. 388, 42 S.Ct. 351, 66 L.Ed. 678 (1921). And, a "just and reasonable" rate of return to the value of dedicated property is required by Section 4 and 5 of the Natural Gas Act. These constitutional and statutory standards for judging the adequacy of the return to dedicated property coincide, so that if a rate of return satisfies the Constitution, then it may be found to be "just and reasonable" by the Commission. *FPC* v. *Natural Gas Pipeline Co.,* 315 U.S. 575, 62 S.Ct. 736, 86 L.Ed. 1037 (1942).

■ In judging in a rate proceeding whether an unconstitutional confiscation of property has occurred, the Commission and the reviewing court must compare the total rate of return to the value of dedicated property as a whole. This principle is reflected in *FPC* v. *Natural Gas Pipeline Co., supra,* which first established that the Natural Gas Act is constitutional. As stated therein,

> [t]he Constitution does not bind rate-making bodies to the service of any single formula or combination of formulas. Agencies to whom this legislative power has been delegated are free, within the ambit of their statutory authority, to make the pragmatic adjustments which may be called for by particular circumstances. Once a fair hearing has been given, proper findings made and other statutory requirements satisfied, the courts cannot intervene in the absence of a *clear showing* that the limits of due process have been overstepped. If the Commission's order, as applied to the facts before it and *viewed in its entirety,* produces no arbitrary result, our inquiry is at an end.

315 U.S. at 586, 62 S.Ct. at 743 (emphasis added).

■ Such a test in a rate proceeding leads to the conclusion that in an attack on individual accounting rules, the reviewing court must defer to agency expertise. Indeed, in *American Telephone & Telegraph Co.* v. *United States,* 299 U.S. 232, 57 S.Ct. 170, 81 L.Ed. 142 (1936), Justice Cardozo reviewed and upheld several challenged provisions of an accounting system promulgated by the Federal Communications Commission. Justice Cardozo said that an accounting rule, at least when it does not represent a change of policy, should be reversed only where it is " 'so entirely at odds with fundamental principles of correct accounting' [citation omitted] as to be the expression of a whim rather than an exercise of judgment." 299 U.S. at 236–37, 57 S.Ct. at 172.

■■ We think the petitioner bears a heavy burden when it challenges FPC accounting regulations on the grounds that they result in an unconstitutional confiscation of property. The effect of the accounting rules should not be viewed and analyzed piecemeal, as Transco would have us do in this case. Rather, the Commission should be free to fashion individual accounting rules unless a rule is arbitrary or capricious, or would clearly and necessarily have the effect of rendering any rate, which is based upon the rule's use, confiscatory in the constitutional sense.

Nothing this Court has said in prior cases would undercut this principle. In *Public Service Comm'n of State of New York* v. *FPC,* 151 U.S.App.D.C. 307, 467 F.2d 361 (1972), we approved the general principle that the Constitution requires that pipelines be allowed to recover their costs for advance payments; but, we did not address the precise rate treatment to be accorded pipelines for nonrecoverable advance payments. Now, we again refuse to draw accounting rules for the Commission unless a Commission rule fails to meet the due process standard enunciated above.

■ Transco has not met the heavy burden to demonstrate that Order No. 465 and the Order of Clarification result in an unconstitutional confiscation. In the instant case, Transco concedes that it will be compensated for the full amount of nonrecoverable advance payments since they may be amortized in cost-of-service and thus recovered through gross revenue. Nevertheless, Transco argues that the challenged accounting rule deprives it of compensation for the capital cost which it bears for working capital dedicated to advance payments which, though prudently made, have become unrecoverable.

We are satisfied that the Commission's treatment of the pipelines' interest-free loans cannot fairly be assailed as unreasonable to the pipelines.

Finally, if in a particular setting the FPC does impose a specific rate that—because of the interplay of various accounting provisions—is not "just and reasonable", Transco could still appeal from that order despite our approval of the accounting rule for general application.

For these reasons, the FPC orders challenged herein are

Affirmed.