**EL PASO NATURAL GAS COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 81–4295.

United States Court of Appeals, Fifth Circuit.

May 24, 1982.

Andrea Wolfman, Atty., F. E. R. C., Washington, D. C., for respondent Federal Energy Regulatory Commission.

Donald J. MacIver, Jr., Scott D. Fobes, El Paso, Tex., Richard C. Green, C. Frank Reifsnyder, Washington, D. C., for petitioner El Paso Natural Gas Co.

Before CLARK, Chief Judge, GARZA and SAM D. JOHNSON, Circuit Judges.

CLARK, Chief Judge:

The El Paso Natural Gas Company appeals from a Federal Energy Regulatory

Commission order, and clarification of that order, disallowing the computation by El Paso of accrued but unpaid gas purchases in its purchased gas adjustment (PGA) account 191. For the reasons set forth below, we reverse the Commission's order in part.

Prior to 1972 a natural gas company was required to provide the Commission with information detailing all aspects of the company's operating costs in order to seek a rate increase under § 4(d) of the Natural Gas Act. However, the Commission became aware that gas purchases alone represented an increasingly significant proportion of a pipeline's total costs, and that the cost of gas purchases fluctuated with great frequency. Therefore, the Commission adopted in 1972 a regulatory mechanism whereby pipelines would be allowed to file for bi-annual rate adjustments based on increases in the cost of gas purchases without having to provide other cost information required in a regular rate increase filing. 18 C.F.R. § 154.38(d)(4). This mechanism, which is called a purchased gas adjustment (PGA) filing, was intended to achieve a fairer rate by reducing the interval between a company's outlay for increased gas cost and the recoupment of that expense from rate-payers. Companies were given the option of using this purchased gas adjustment method by adding a clause to their regularly filed tariff. However, the Commission required a company electing to use the PGA method to continue using it for three years prior to reverting to the traditional method of seeking rate increases.

The bi-annual PGA calculation has two basic components. The first involves an estimate by the company of what its gas costs will be for the next six months. If the current estimate of the cost of gas purchases for the next six months is greater than the originally anticipated cost of gas in the company's filed tariff, the company may increase its rates accordingly and thereby collect increased revenues from its customers concurrently with its outlays for gas.

This first component of the PGA calculation is modified by a second component, in which the company accounts for actual results of the previous six month period. If the amount actually paid for gas during the previous six months was greater than the amount estimated for this six month component in the prior PGA filing, the company adds that excess as a surcharge to the amount calculated in the first PGA component. On the other hand, if the company actually paid less than it anticipated it would six months ago, the amount is subtracted from the component. In either event, interest is computed on the amount of the adjustment. The premise is that if the company has paid out more for gas than it has collected from its ratepayers for such purposes, it should be compensated for not having the use of that money for the time period in question. Conversely, if the company has paid less for gas than it collected from its ratepayers, the ratepayers have been deprived of the use of the amounts they overpaid.

In sum then, under the PGA mechanism the company's rate adjustments reflect a current estimate of the cost of gas modified by a surcharge for previous under or overcollections plus or minus an interest factor. Companies using the PGA procedure continually record under or overcollections and interest calculations in an account designated account 191.

This case centers around El Paso's entry in account 191 of amounts attributable to accrued but unpaid gas purchases because El Paso uses an accrual basis of accounting. These transactions reflect the cost of gas transferred by a seller to El Paso at a determined price, which has not been actually paid to the seller by El Paso. The Commission ordered El Paso to strike all such unpaid accruals from account no. 191 except for those which would be paid within a normal 30–60 day billing cycle after transfer.

El Paso's appeal asserts that the Commission's order misinterprets and misapplies its own regulations which permit accrual basis accounting; that the order is arbitrary on

its face by defining cost to exclude some, but not all, accruals; and that the order violates the traditional "matching" policy of ratemaking which requires that present ratepayers bear the costs of presently received benefits. We need not examine these contentions in the present proceeding.

The Commission asserts two justifications for the order. The first, termed the most significant by the Commission, is that permitting El Paso to collect interest for accrued but unpaid gas costs would give El Paso a windfall since the company would be compensated for the loss of the use of money which in actuality it has not paid out. The second, relates to the overall scheme of the PGA procedure which the Commission asserts was designed to allow companies to recoup increased gas costs on a current, or at most, slightly delayed basis. The Commission argues that allowing inclusion of unpaid accruals in account 191 would have the effect of permitting precollection of increased costs.

The Commission's first justification is conceded. El Paso has agreed to forego collection of interest on unpaid accruals. The second justification is improper. The record before us simply does not demonstrate whether any precollections, as defined by the Commission, have occurred— only that they might occur. While deference is ordinarily due to the Commission's accounting rules, *Transcontinental Gas Pipe Line Corp. v. Federal Power Commission*, 518 F.2d 459, 465 (D.C.Cir.1975), this deference presupposes that the proper findings have been made to support their promulgation. *See id.*, quoting *Federal Power Commission v. Natural Gas Pipeline Co.*, 315 U.S. 575, 586, 62 S.Ct. 736, 743, 86 L.Ed. 1037 (1942). That is not possible here. Accordingly, we reverse the order disallowing inclusion of unpaid accruals in account 191 as it pertains to the PGA filing by El Paso in question. The proceeding is remanded to the Commission for modification of its order to reflect that El Paso may not charge interest on the unpaid accruals in this filing which are collectable outside the normal 30–60 day billing cycle from date of purchase.

We are advised that there are numerous other PGA filings pending before the Commission in which these same issues are sure to arise. Because our ruling here is based on El Paso's interest concession and on the lack of evidence as to the precollection issue, it is, of course, not binding as to any future disputes concerning the inclusion of unpaid accruals of PGA clauses in which these same factors are not present.

REVERSED IN PART AND REMANDED.