ASARCO, INC., Inspiration Consolidated Copper Company and Kennecott Corporation, Petitioners,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent,

Southern California Edison Company, El Paso Electric Company, Phelps Dodge Corporation, Pacific Gas & Electric Company, Salt River Project Agricultural Improvement and Power District, Governor Edmund G. Brown, Jr., Arizona Public Service Company, El Paso Natural Gas Company, Southern Union Company, Southwest Gas Corporation, Intervenors.

SOUTHERN CALIFORNIA GAS COMPANY, Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent,

El Paso Electric Company, Phelps Dodge Corporation, Pacific Gas & Electric Company, Salt River Project Agricultural Improvement and Power District, Governor Edmund G. Brown, Jr., Arizona Public Service Company, Southern Union Company, El Paso Natural Gas Company, Southwest Gas Corporation, Intervenors.

PACIFIC GAS AND ELECTRIC COMPANY, Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent,

Phelps Dodge Corporation, Salt River Project Agricultural Improvement and Power District, Governor Edmund G. Brown, Jr., Arizona Public Service Company, Southern Union Company, Southwest Gas Corporation, El Paso Natural Gas Company, El Paso Electric Company, Intervenors.

PUBLIC UTILITIES COMMISSION OF the STATE OF CALIFORNIA, Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent,

Arizona Public Service Company, El Paso Natural Gas Company, Southern Union Company, Southwest Gas Corporation, Governor Edmund G. Brown, Jr., Public Service Commission of West Virginia, Intervenors.

ASARCO, INC., Inspiration Consolidated Copper Company and Kennecott Corporation, Petitioners,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent,

Arizona Public Service Company, Salt River Project Agricultural Improvement and Power District, Phelps Dodge Corporation, Southern California Gas Company, Southwest Gas Corporation, Southern Union Company, Tenneco Oil Company, et al., Intervenors.

EL PASO NATURAL GAS COMPANY, Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent,

El Paso Electric Company, Pacific Gas and Electric Company, Phelps Dodge Corporation, Salt River Project Agricultural Improvement and Power District, Tenneco Oil Company, et al., Southern California Edison Company, Southern California Gas Company, Southern Union Company, People of State of California, et al., Governor Edmund G. Brown, Jr., Arizona Public Service Company, Southwest Gas Corporation, Public Service Commission of West Virginia, Intervenors.

EL PASO NATURAL GAS COMPANY, Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent,

Arizona Public Service Company, Pacific Gas and Electric Company, Southern Union Company, Southern California Gas Company, Salt River Project Agri-

cultural Improvement and Power District, Public Utilities Commission of State of California, Southwest Gas Corporation, Governor George Deukmejian, Intervenors.

Nos. 82-2173, 82-2204, 82-2270, 82-2311, 82-2527, 83-1409 and 83-1415.

United States Court of Appeals, District of Columbia Circuit.

Argued May 30, 1984.

Decided November 29, 1985.

As Amended Nov. 29, 1985.

Douglas K. Porter, with whom D.J. Gilmore, Thomas D. Clarke and Eddie R. Island, Los Angeles, Cal., for Southern Cal. Gas Co. petitioner in No. 82–2204, Daniel E. Gibson and Robert B. McLennan, San Francisco, Cal., for Pacific Gas and Elec. Co. petitioner in No. 82–2270, J. Calvin Simpson and Lawrence Q. Garcia, San Francisco, Cal., for Public Utilities Com'n of the State of Cal. petitioner in No. 82–2311, were on joint brief, for petitioners in Nos. 82–2204, 82–2270 and 82–2311. D.J. Gilmore, Los Angeles, Cal., also entered an appearance for petitioner Southern Cal. Gas Co.

Nicholas W. Fels and David N. Heap, Washington, D.C., were on memorandum in lieu of brief for ASARCO, Inc., et al., petitioners in Nos. 82–2173 and 82–2527, intervenor in No. 83–1409.

C. Frank Reifsnyder, with whom Richard C. Green, Washington, D.C., Donald J. MacIver, Jr., Richard Owen Baish, Daniel E. Bappe and Scott D. Fobes, El Paso, Tex., were on brief, for El Paso Natural Gas Co. petitioner in Nos. 83–1409 and 83–1415 and intervenor in Nos. 82–2173, 82–2204, 82–2270, 82–2311 and 82–2527.

Thomas E. Hirsch, III, Atty., F.E.R.C., with whom Stephen R. Melton, Acting Gen. Counsel, and Jerome M. Feit, Sol., F.E.R.C., Washington, D.C., were on brief, for respondent F.E.R.C., in all cases. Joshua Z. Rokach, Atty., F.E.R.C., Washington, D.C., also entered an appearance for F.E.R.C.

Peyton G. Bowman, III, Daniel J. Wright, Washington, D.C., Steven M. Wheeler and Herbert I. Zinn, Phoenix, Ariz., entered appearances for Ariz. Public Service Co., intervenor in Nos. 82–2173, 82–2204, 82–2270, 82–2311, 82–2527, 83–1409 and 83–1415.

J. Michael Marcoux, Washington, D.C., entered an appearance for El Paso Elec. Co. intervenor in Nos. 82–2173, 82–2204, 82–2270, 82–2311, 82–2527, 83–1409 and 83–1415.

Michael J. Strumwasser and Daniel P. Selmi, Los Angeles, Cal., entered appearances for Governor Edmund G. Brown, Jr., intervenor in Nos. 82–2173, 82–2204, 82–2270, 82–2311 and 83–1409, and Governor George Deukmejian, intervenor in No. 83–1415.

R. Gordon Gooch, Houston, Tex., Charles M. Darling, IV, Steven R. Hunsicker, John W. Leslie, George B. Mickum, III, Steven H. Brose, Steven Reed, Michael J. Henke, David T. Andril and Ann M. Ashton, Washington, D.C., entered appearances for Tenneco Oil Co., et al., intervenors in Nos. 82–2527 and 83–1409.

Robert J. Haggerty, Washington, D.C., Bruce E. Henderson, Dallas, Tex., and Cameron R. Graham, Albuquerque, N.M., entered appearances for Southern Union Co. intervenor in Nos. 82–2173, 82–2204, 82–2270, 82–2311, 82–2527 and 83–1409.

William A. Claerhout and Charles H. McCrea, Las Vegas, Nev., entered appearances for Southwest Gas Corp. intervenor in Nos. 82–2173, 82–2204, 82–2270, 82–2311, 82–2527, 83–1409 and 83–1415.

Robert R. Rodecker, Charleston, W. Va., and Richard E. Hitt, entered appearances for Public Service Com'n of W. Va. intervenor in Nos. 82–2311 and 83–1409.

H. Robert Barnes and Larry R. Cope, Rosemead, Cal., entered appearances for Southern Cal. Edison Co. intervenor in Nos. 82–2173 and 83–1409.

Joel L. Greene, Carl W. Ulrich, Washington, D.C., and Richard H. Silverman, Phoenix, Ariz., were on statement in lieu of brief for Salt River Project Agr. Improve-

ment and Power Dist. intervenor in Nos. 82–2173, 82–2204, 82–2270, 82–2527, 83–1409 and 83–1415.

Before TAMM,* WALD and SCALIA, Circuit Judges.

Opinion for the Court filed by Circuit Judge SCALIA.

SCALIA, Circuit Judge.

We are required to determine whether we have jurisdiction under § 19 of the Natural Gas Act ("NGA"), 15 U.S.C. § 717r (1982), to consider five petitions for review of orders of the Federal Energy Regulatory Commission. Southern California Gas Company ("SoCal"), Pacific Gas and Electric Company ("PG&E"), the California Public Utilities Commission ("CalPUC"), and ASARCO, Inc., Inspiration Consolidated Copper Company, and Kennecott Corporation (jointly "ASARCO") have each petitioned for review of a March 31, 1982, order of the Commission in which it accepted for filing a tariff submitted by El Paso Natural Gas Company ("El Paso") despite demands that the filing be immediately rejected under the *Mobile-Sierra* doctrine as inconsistent with existing rate settlements. ASARCO also seeks review of a September 30, 1982, order of the Commission that accompanied another September 30 order in which the Commission for the first time addressed and resolved the *Mobile-Sierra* claims. The issues presented are whether we have jurisdiction to review an acceptance for filing as to which a *Mobile-Sierra* claim has been made but has not been ruled upon by the Commission; and whether a petitioner may urge before us an objection that others presented to the Commission in their petition for rehearing but that the petitioner itself did not.[1]

* Judge Tamm died before the final decision of this case.

**1.** In the remaining two cases in this consolidated proceeding (Cases Nos. 83–1409 and 83–1415), El Paso seeks review of the March 31 and

I

Both an abbreviated review of the recent history of natural gas regulation and a detailed account of the complicated procedural history of this case are necessary for an understanding of the jurisdictional issues we confront.

A

From 1938 to 1978, the NGA required that all rates charged for natural gas sold for resale in interstate commerce be "just and reasonable." NGA, ch. 556, § 4(a), 52 Stat. 821, 822 (1938) (codified as amended at 15 U.S.C. § 717c(a) (1982)). Initially, the Commission interpreted the NGA as granting jurisdiction only over the rates charged by interstate *pipelines* for gas sold to their jurisdictional customers. In determining whether a rate was "just and reasonable," the Commission used a "cost-of-service" methodology—*i.e.*, it allowed recoupment of the costs incurred by the pipeline in acquiring (or producing) and transporting gas, plus a reasonable return on investment.

In 1954, the Supreme Court held that under the NGA, the Commission was also required to regulate the sales of gas to interstate pipelines by independent producers. *Phillips Petroleum Co. v. Wisconsin,* 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035 (1954). Individual cost-of-service methodology could feasibly be applied to the relatively few interstate pipeline companies; but the Commission simply could not process individual rate filings by the thousands of independent producers. For its newly imposed responsibilities, therefore, the Commission adopted the methodology of area-wide ratemaking, determining "just and reasonable" rates for entire geographical areas based on the average cost of service of independent producers within that area. *Area Rate Proceeding,* 34 F.P.C. 159 (1965), upheld in *Permian Ba-*

September 30 orders, as well as several related Commission actions. Disposition of the jurisdictional issues addressed in this opinion will not affect our need to reach the merits of El Paso's contentions.

*sin Area Rate Cases*, 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968). The Commission later established "national rates" for independent producer sales of gas of recent vintage. *Just and Reasonable National Rates for Sales of Natural Gas*, 52 F.P.C. 1604 (1974), upheld in *Shell Oil Co. v. FPC*, 520 F.2d 1061 (5th Cir.1975), *cert. denied*, 426 U.S. 941, 96 S.Ct. 2660, 49 L.Ed.2d 394 (1976).

The Commission continued to regulate gas sold by interstate pipelines on an individual cost-of-service basis. In Opinion No. 568, however, it decided that for the purpose of valuing the cost-of-gas component of the cost of service, pipeline companies could value certain of their own production at the same "area rate" applied to gas sales by independent producers. *Pipeline Production Area Rate Proceeding (Phase I)*, 42 F.P.C. 738 (1969), upheld in *City of Chicago v. FPC*, 458 F.2d 731 (D.C.Cir. 1971), *cert. denied*, 405 U.S. 1074, 92 S.Ct. 1495, 31 L.Ed.2d 808 (1972). Nevertheless, under Opinion No. 568 a pipeline could request permission to continue to value its own production on a cost-of-service basis upon a showing of "special circumstances." 42 F.P.C. at 745.

Against this regulatory background, Congress in 1978 passed the Natural Gas Policy Act ("NGPA"), Pub.L. No. 95–621, 92 Stat. 3356 (codified at 15 U.S.C. §§ 3301–3432 (1982)). Title I of this Act established ceiling prices for "first sales" of natural gas. NGPA §§ 102–109, 15 U.S.C. §§ 3312–3319. Title VI eliminated Commission ratemaking authority over the first sales of most natural gas, NGPA § 601(a)(1), 15 U.S.C. § 3431(a)(1), leaving the Title I ceiling prices as the only federal control. Moreover, for the Commission's continuing authority over interstate pipeline rates, the NGPA provided that the Commission must deem "just and reasonable" any amount paid in a first sale of natural gas that does not exceed the appropriate ceiling price. NGPA § 601(b)(1)(A), 15 U.S.C. § 3431(b)(1)(A).

In the wake of the NGPA's enactment, a dispute arose over whether a sale to pipe-line customers of gas which that pipeline itself had produced was a "first sale" within the meaning of the NGPA and therefore the gas-cost component of the pipeline rate could be set at any level up to the applicable NGPA ceiling. The issue was hotly contested before the Commission, and in several related orders FERC ruled that most such sales did not come under the NGPA and would continue to be rate-regulated as they previously had been under the NGA. *See* Final Rule Governing the Maximum Lawful Price for Pipeline, Distributor or Affiliate Production, 44 Fed.Reg. 66,577 (1979); Pricing of Pipeline Production Under the Natural Gas Act, 45 Fed.Reg. 53,-091 (1980); Pricing of Pipeline and Affiliate Production Under the Natural Gas Act, 45 Fed.Reg. 67,083 (1980). A number of pipeline companies appealed the Commission's orders. On December 23, 1981, the Fifth Circuit overturned the Commission, holding that pipeline production was included within the NGPA definition of "first sale," NGPA § 2(21), 15 U.S.C. § 3301(21), and therefore that pipelines could value their own production at Title I ceiling prices. *Mid-Louisiana Gas Co. v. FERC*, 664 F.2d 530 (5th Cir.1981). The Supreme Court affirmed the Fifth Circuit in major part on June 28, 1983. *Public Service Commission of New York v. Mid-Louisiana Gas Co.*, 463 U.S. 319, 103 S.Ct. 3024, 77 L.Ed.2d 668 (1983).

**B**

El Paso is a natural gas pipeline company which sells both gas it purchases from others and gas it produces itself. For reasons unimportant here, El Paso's gas production has long been divided into three categories for regulatory purposes. Only the valuation of its Category II gas—*viz.*, gas produced from wells drilled on or after January 1, 1973, on leases acquired by El Paso before October 8, 1969—is relevant to the jurisdictional issues addressed in this opinion.

At the time of the Fifth Circuit's *Mid-Louisiana* decision, pipeline production sharing the characteristics of El Paso's

Category II gas was generally valued at the applicable area or national rate. However, pursuant to the "special circumstances" exception provided in Opinion No. 568, the Commission in 1977 approved a settlement between El Paso and its customers (the RP72–150 settlement), under which El Paso was permitted to continue to value its Category II production on a cost-of-service basis. Beginning in 1978, the Commission approved several subsequent settlements, including the RP78–18 settlement, the RP79–12 settlement, and the RP79–12 (Further Extension) settlement, under which Category II gas continued to be valued on a cost-of-service basis. El Paso was operating under the last of these when the Fifth Circuit issued its *Mid-Louisiana* decision holding that pipelines could value their production at NGPA ceiling prices.

On March 1, 1982, in its first PGA filing [2] after the Fifth Circuit's *Mid-Louisiana* decision El Paso submitted alternate sets of tariff sheets. In the first or "lower" set, El Paso merely passed through its increased *purchased* gas costs but did not change its method of valuing its *own* production. In the second or *"Mid-Louisiana"* set, El Paso attempted to implement the Fifth Circuit decision by valuing its Category II production at NGPA ceiling prices both prospectively and retroactively to December 1, 1978 (the date of the NGPA's enactment). Several of El Paso's customers intervened and asked the Commission to reject outright the *Mid-Louisiana* tariff sheets, arguing, *inter alia*, that El Paso was barred from valuing its production at NGPA rates by its prior rate settlements which invoked the *Mobile-Sierra* doctrine.[3]

On March 31, 1982, FERC accepted both of the alternate tariff sheets for filing. *See El Paso Natural Gas Co., Order Accepting for Filing and Suspending Proposed Tariff Sheets Subject to Refund and Conditions and Setting Matter for Hearing,* 18 F.E.R.C. (CCH) ¶ 61,305 (Mar. 31, 1982) ("March 31 Order"). The Commission permitted the lower tariff sheets to go into effect, subject to refund, after a one-day suspension. *See* NGA § 4(e), 15 U.S.C. § 717c(e). The Commission also accepted the higher, *Mid-Louisiana* tariff sheets for filing, but suspended them for five months, subject to refund, and "subject to any further orders which concern the proper implementation of the *Mid-La* decision." March 31 Order at 61,654. With respect to the customers' objection that El Paso was barred from implementing the *Mid-Louisiana* decision by the *Mobile-Sierra* doctrine, the Commission said only:

Because of the involved history underlying the evolution of El Paso's treatment to date of its own production on a cost-of-service basis, the impact of the recent *Mid-La* decision on the proper valuation of this production raises several unanswered legal questions. We need not articulate each of them on this occasion. We express only the view that critical questions of potentially wider application to other pipelines similarly situated need be addressed as a predicate to any final authorization of El Paso's higher proposed tariff filing. In order to allow the Commission additional time to assess the impact of *Mid-La* on El Paso's rates, and to forestall any attendant financial burden on El Paso's customers during this period of assessment, we

**2.** A purchased gas adjustment (or "PGA") filing is a specialized form of rate change whereby pipelines are allowed to adjust their rates bi-annually to account for changes in costs incurred in purchasing or producing their gas supply. *See El Paso Natural Gas Co. v. FERC,* 677 F.2d 22, 23 (5th Cir.1982).

**3.** This court has described the *Mobile-Sierra* doctrine, first articulated by the Supreme Court in *United Gas Pipe Line Co. v. Mobile Gas Service Corp.,* 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed.

373 (1956), and *FPC v. Sierra Pacific Power Co.,* 350 U.S. 348, 76 S.Ct. 368, 100 L.Ed. 388 (1956), as "refreshingly simple: ... Rate filings consistent with contractual obligations are valid; rate filings inconsistent with contractual obligations are invalid." *Richmond Power & Light v. FPC,* 481 F.2d 490, 493 (D.C.Cir.), *cert. denied sub nom. Indiana & Michigan Electric Co. v. Anderson Power & Light,* 414 U.S. 1068, 94 S.Ct. 578, 38 L.Ed. 473 (1973) (footnote omitted).

shall suspend El Paso's higher alternate tariff for a period of five months and shall set this matter for hearing. *Id.* at 61,652. A number of parties promptly filed petitions for "rehearing" of the March 31 Order.

On September 30, 1982, the Commission for the first time addressed the merits of the *Mobile-Sierra* objections. *See El Paso Natural Gas Co., Order Granting in Part and Denying in Part Rehearing Applications and Convening a Technical Conference on Certain Unresolved Issues,* 20 F.E.R.C. (CCH) ¶ 61,443 (Sept. 30, 1982) ("September 30 Order No. 1"). The Commission held that the company was barred from implementing NGPA pricing by existing settlements and the *Mobile-Sierra* doctrine. *Id.* at 61,909–13. In apparent agreement with the customers, the Commission held that the settlements precluded El Paso from NGPA pricing for periods prior to June 1, 1982 (the expiration date of the RP79–12 (Further Extension) settlement), but that El Paso would be free to price its production at NGPA levels for periods thereafter. *Id.* at 61,913. The Commission rejected the *Mid-Louisiana* tariff sheets filed by El Paso on March 1, and ordered El Paso to file new tariffs in accordance with the September 30 opinion. *Id.*

Without first seeking Commission rehearing, SoCal, PG&E, CalPUC and ASARCO immediately petitioned this court for review of the March 31 Order and September 30 Order No. 1. Only El Paso filed a petition for rehearing.

Prior to the Commission resolution of the *Mobile-Sierra* claims in its September 30 Order No. 1, El Paso on August 30, 1982, had submitted its second bi-annual PGA filing in which it again attempted to implement *Mid-Louisiana* pricing. In a separate order of September 30, the Commission ruled that resolution of the *Mid-Louisiana* issues raised by the second El Paso PGA filing would be in accordance with the Commission's September 30 Order No. 1. *See El Paso Natural Gas Co., Order Accepting for Filing and Suspending Proposed Tariff Sheets Subject to Refund and Conditions and Establishing Hearing Procedures on Limited Issue,* 20 F.E. R.C. (CCH) ¶ 61,433 (Sept. 30, 1982) ("September 30 Order No. 2"). ASARCO and CalPUC did petition for rehearing of this second September 30 order, as did others, but argued only that in light of the Supreme Court's issuance of a writ of certiorari in the *Mid-Louisiana* case, the Commission should suspend the second El Paso PGA filing for five months and provide that disposition of the *Mid-Louisiana* issues would turn on the outcome of the Supreme Court's decision.

Two other parties to the proceeding—the Arizona Electric Power Cooperative (AEPCO) and the City of Willcox, Arizona—also petitioned the Commission for rehearing of its September 30 Order No. 2. In their lengthy petition specifically addressing, *inter alia,* the merits of the Commission's *Mobile-Sierra* determination, AEPCO and Willcox argued that the Commission, while correct in viewing the rate settlements as *Mobile-Sierra* agreements binding El Paso to cost-of-service valuation of its production, incorrectly interpreted those settlements. The Commission apparently regarded the successive settlements as superseding one another, so that when the last of them, RP79–12 (Further Extension), expired on June 1, 1982, El Paso would no longer be bound by any *Mobile-Sierra* agreement. AEPCO and Willcox, in their petition for rehearing of the September 30 order, called the Commission's attention to a provision of the RP72–150 settlement which, they argued, *permanently* bound El Paso to cost-of-service pricing unless the Commission in an NGA § 5 proceeding ordered otherwise. According to AEPCO and Willcox, the subsequent settlements, including RP79–12 (Further Extension), were not meant to supersede the RP72–150 settlement, but were only periodic applications of its cost-of-service requirement. Upon the expiration of RP79–12 (Further Extension), they argued, RP72–150's cost-of-service provisions "sprang back to life." It is this "settlement interpretation" argument, raised only by AEPCO and Willcox

(who are not parties in the present proceeding [4]), that SoCal, PG&E, CalPUC and ASARCO now wish to urge before this court.

On November 29, 1982, the Commission denied all applications for rehearing of both September 30 orders. *See El Paso Natural Gas Co., Order Denying Requests for Rehearing*, 21 F.E.R.C. (CCH) ¶ 61,219 (Nov. 29, 1982) ("November 29 Order"). The Commission addressed the "settlement interpretation" argument raised by AEPCO and Willcox, stating that it had again reviewed the RP72–150 settlement, as well as the subsequent settlements, and found that the later agreements were intended to supersede the earlier one. AS-ARCO (but not CalPUC), among others, filed a petition for review of the November 29 Order. ASARCO's petition, together with the four petitions for review filed by SoCal, PG&E, CalPUC and ASARCO immediately after the September 30 orders, comprise the five petitions whose jurisdictional status we consider below.

## II

### A

The NGA prohibits us from reviewing an order of the Commission unless the person seeking review has first "made application to the Commission for a rehearing thereon." NGA § 19(a), 15 U.S.C. § 717r(a). In four of the five cases before us, the petitioners sought rehearing of only the March 31 Order, and not of either of the September 30 orders. If that was not an appealable order, we have no jurisdiction to hear these four cases.

The March 31 Order, it will be recalled, did not rule upon the merits of the *Mobile-Sierra* issue, much less upon the overall validity of the filed tariffs. Rather, it merely accepted both (inconsistent) sets of tariffs for filing, and suspended the *Mid-Louisiana* set for the maximum permissi-

ble period, precisely in order that the *Mobile-Sierra* problem could be considered. By no stretch of the imagination does this come within the category of final orders reviewable under § 19(b) of the NGA, 15 U.S.C. § 717r(b), whose counterpart, § 313(b) of the Federal Power Act, ch. 687, 49 Stat. 860 (1935) (codified as amended at 16 U.S.C. § 825*l*(b) (1982)), the Supreme Court has described as permitting review of only "orders of a definitive character dealing with the merits of a proceeding before the Commission." *FPC v. Metropolitan Edison Co.*, 304 U.S. 375, 384, 58 S.Ct. 963, 967, 82 L.Ed. 1408 (1938).

> The decision to accept a rate filing ... is undeniably interlocutory. Acceptance of a filing decides nothing concerning the merits of the case; it merely reserves the issues pending a hearing....
>
> Acceptance of a filing, coupled with scheduling of a hearing, is the *initiation* of an administrative proceeding; judicial review properly follows the *conclusion* of the proceeding.

*Papago Tribal Utility Authority v. FERC*, 628 F.2d 235, 240 (D.C.Cir.), *cert. denied*, 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980). *See also Mississippi Valley Gas Co. v. FERC*, 659 F.2d 488, 498 (5th Cir. 1981). To undertake review of such decisions "would 'undermine the Commission's primary jurisdiction by bringing the court[ ] into the adjudication of the lawfulness of rates in advance of administrative consideration' ... and would place an intolerable burden on FERC by second-guessing its preliminary and necessarily hasty decisions regarding the acceptance of rate filings." *Papago*, 628 F.2d at 243 (quoting *Southern Ry. v. Seaboard Allied Milling Corp.*, 442 U.S. 444, 460, 99 S.Ct. 2388, 2397, 60 L.Ed.2d 1017 (1979)).

The courts have departed from this evaluation in one narrow circumstance: where the Commission has accepted an NGA § 4

---

**4.** AEPCO and Willcox were parties in this proceeding until September 18, 1985, when we granted their petitions to dismiss the cases in which they were the sole petitioners and to permit their withdrawal in the remaining cases.

On September 25, 1985, we issued an order to show cause why, in light of the withdrawal of AEPCO and Willcox, the petitions of SoCal, PG & E, CalPUC and ASARCO should not be dismissed. This opinion arises out of that order.

filing *after considering and rejecting* the contention that a *Mobile-Sierra* contract barred § 4 rate increases. *See Papago*, 628 F.2d at 244–45; *Mississippi Valley*, 659 F.2d at 498–99. In such a situation, the Commission has separately decided that preliminary merits issue, so that judicial examination of the point involves no preemption of the agency's primary jurisdiction. In the present case, by contrast, the Commission accepted the tariffs for filing *not* because it disagreed with the *Mobile-Sierra* contentions but precisely and explicitly so that it could have the time needed to consider those contentions, suspending the effectiveness of the rates in the interim. *See* March 31 Order at 61,652. The "non-final" nature of the March 31 Order is plainly evidenced by the fact that in its September 30 Order No. 1, the Commission *agreed* with the customers that the settlements qualified as *Mobile-Sierra* agreements, *rejected* the *Mid-Louisiana* tariffs in their entirety, and ordered El Paso to file new tariffs consistent with the September 30 order. Not until November 29—when the Commission denied the rehearing requests of El Paso, AEPCO, Willcox and others—did the Commission reach a final resolution of the *Mobile-Sierra* issue. Initial reservation of the *Mobile-Sierra* issue is apparently not uncommon. *See, e.g., Kansas Cities v. FERC*, 723 F.2d 82 (D.C.Cir.1983); *Arizona Public Service Co., Order Accepting for Filing and Suspending Proposed Rates in Part*, 14 F.E.R.C. (CCH) ¶ 61,185 (Feb. 27, 1981). We know of no case reviewing an acceptance of filing in such circumstances [5] and on principle think there should be none. We have recently noted the deference that we accord to the Commission in the interpretation of gas supply contracts, particularly with regard to the *Mobile-Sierra* issue. *See Kansas Cities*,

723 F.2d at 87. Should that issue somehow present itself to us in a context apart from review of the agency's decision, the doctrine of primary jurisdiction might well require that we stay our proceedings in order to obtain the Commission's views. *Cf. Nader v. Allegheny Airlines*, 512 F.2d 527, 544 (D.C.Cir.1975). To wrench that issue abruptly from the Commission's hands, while it is in the process of deciding it, in order that we might decide it without benefit of the Commission's thinking, is beyond imagination.

The course petitioners propose would frustrate the purpose of the application-for-rehearing requirement that § 19(b) makes a condition of judicial review, which is in part "to insure that the Commission has an opportunity to deal with any difficulties presented by its action *before* the reviewing court intervenes." *Rhode Island Consumers' Council v. FPC*, 504 F.2d 203, 212 (D.C.Cir.1974) (emphasis added). In petitioning for "rehearing" of an order like that of March 31, the customer can do no more than repeat the same protests the Commission already has said it needs time to consider. The threat of our review would accomplish nothing, unless it be to force the Commission to render hasty, ill-considered decisions on difficult *Mobile-Sierra* questions.

▮▮▮ We hold that the reviewability of a Commission order accepting tariffs for filing over *Mobile-Sierra* protests depends upon whether the Commission's order decides and rejects the *Mobile-Sierra* claims or instead reserves them for later disposition. In this case, the March 31 Order was clearly of the latter sort and therefore not reviewable. We thus dismiss the four peti-

---

**5.** In *City of Corinth v. FPC,* 268 F.2d 10 (5th Cir.), *cert. denied,* 361 U.S. 900, 80 S.Ct. 209, 4 L.Ed.2d 156 (1959), the court declined to accept jurisdiction in a related context that arguably presented a stronger case for review. There the petitioner sought to challenge on *Mobile-Sierra* grounds not the initial acceptance for filing but the subsequent order at the end of the permissible suspension period permitting the filed rates

to go into effect subject to refund. Although in that case the *Mobile-Sierra* issue had not been raised until the petition for rehearing of the order allowing the rates to go into effect, the court did not rely upon lack of timeliness, but rather upon the consideration, equally applicable here, that "the grounds here asserted should first be considered and passed upon by the Commission." *Id.* at 12.

tions for review filed by SoCal, PG&E, CalPUC and ASARCO.[6]

**B**

■ We are left with ASARCO's petition for review of the November 29 Order in which the Commission denied the application of ASARCO for rehearing of September 30 Order No. 2. ASARCO concedes that the "settlement interpretation" argument upon which the Category II dispute now turns was not made in that application, which argued only that the September 30 order should "be revised to provide that disposition of the *Mid-Louisiana* issue will turn on the outcome in the Supreme Court." R. 3474. ASARCO contends, however, that since AEPCO and Willcox raised the "settlement interpretation" argument in *their* petition for rehearing, AS-ARCO should be able to litigate its rejection here.

Section 19 of the NGA provides:

(a) Any person ... aggrieved by an order issued by the Commission ... may apply for a rehearing.... *The application for rehearing* shall set forth specifically the ground or grounds upon which such application is based.... No proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon....

(b) Any party to a proceeding ... aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the court of appeals ..., by filing in such court, within sixty days after the order of the Commission upon *the application for rehearing,* a written petition.... No objection to the order of the Commission shall be

considered by the court unless such objection shall have been urged before the Commission in *the application for rehearing* unless there is reasonable ground for failure so to do....

15 U.S.C. § 717r(a), (b) (emphasis added). Use of the definite article in the last quoted sentence ("in *the* application for rehearing," instead of "in *an* application for rehearing") makes it plain that what is referred to is the same application for rehearing mentioned earlier in subsection (b), which in turn (by reason of the same use of the definite article) clearly refers to the same application for rehearing mentioned in subsection (a), to wit, the application *of the party who seeks judicial review.*

We cannot accept ASARCO's contention that the object of the provision, after all, is merely to assure that the Commission has had an opportunity to address the point— which is well enough assured so long as some other party has raised it. That is refuted by the very existence, in § 19, of the application-for-rehearing requirement itself, which must be complied with even if the point sought to be appealed was raised, considered and rejected in the original proceeding. *See, e.g., Panhandle Eastern Pipe Line Co. v. FPC,* 324 U.S. 635, 645, 65 S.Ct. 821, 826, 89 L.Ed. 1241 (1945). That is quite the opposite of the usual rule, set forth in the Administrative Procedure Act, that "agency action otherwise final is final for the purposes of [judicial review] whether or not there has been presented or determined an application for ... any form of reconsiderations...." 5 U.S.C. § 704 (1982). It is clear, then, that the provisions of § 19 cannot be rationalized on a theory

---

**6.** Our holding is contrary to a November 1, 1983, decision of a motions panel of this court in which the request of El Paso to dismiss the same petitions was denied. The panel did not explain its rationale for holding the petitions reviewable, other than to cite without comment the *Papago* decision, which, as we have explained, addresses the reviewability of a significantly different type of order. The disposition of a motions panel may of course be reexam-

ined during the merits panel's in-depth consideration of the case. *American Methyl Corp. v. EPA,* 749 F.2d 826, 832 & n. 35 (D.C.Cir.1984); *Association of Investment Brokers v. SEC,* 676 F.2d 857, 863 (D.C.Cir.1982). That is particularly appropriate where the issue is a jurisdictional one. *See, e.g., Ray v. Edwards,* 725 F.2d 655, 658 n. 3 (11th Cir.1984); *Hayes v. United States Gov't Printing Office,* 684 F.2d 137, 138 n. 1 (D.C.Cir.1982).

that all is well so long as the agency has had an opportunity to address the point.[7]

This court's opinion in *Arkansas Power & Light Co. v. FPC*, 517 F.2d 1223, 1236–37 (D.C.Cir.1975), *cert. denied sub nom. Arkansas Louisiana Gas Co. v. FPC*, 424 U.S. 933, 96 S.Ct. 1146, 47 L.Ed.2d 341 (1976), assumed without discussion that § 19(b) represents no more than a requirement of exhaustion of remedies, and that we are free to allow exceptions to its provisions as we do to the general exhaustion requirement. Although, for the reasons stated above, we reject that analysis, our disposition today is not incompatible with the holding of that case, which rested not upon one of the ordinary exceptions to exhaustion (such as the futility of seeking relief from the agency) but upon what the court regarded as acknowledgment by the agency, through subsequent revision of its practice, that its action under challenge had been unlawful. *See id.* at 1237. We do not have such an extraordinary situation before us. Other cases applying § 19 establish a clear pattern of adhering to the terms of the statute. *See, e.g., FPC v. Colorado Interstate Gas Co.*, 348 U.S. 492, 498–500, 75 S.Ct. 467, 471, 99 L.Ed. 583 (1955); *Interstate Natural Gas Ass'n v. FERC*, 716 F.2d 1, 15 (D.C.Cir.1983), *cert. denied*, 465 U.S. 1108, 104 S.Ct. 1615, 80 L.Ed.2d 144 (1984) (applying similar provision of NGPA); *Consolidated Gas Supply Corp. v. FERC*, 611 F.2d 951, 958–59 (4th Cir.1979); *Boston Gas Co. v. FERC*, 575 F.2d 975, 979 (1st Cir.1978).

In light of the clear text of the statute, we feel no compulsion to assign a purpose to the rule Congress prescribed, but one comes readily to mind. A mandatory petition-for-rehearing requirement, with or without the additional requirement of raising the very objection urged on appeal, is virtually unheard-of, but both requirements happen to exist in all three of the major statutes administered by FERC. See, in addition to § 19 of the NGA, 15 U.S.C. § 717r, § 506 of the NGPA, 15 U.S.C. § 3416, and § 313 of the Federal Power Act, 16 U.S.C. § 825*l*. It is reasonable to regard both of them as the product of an awareness that FERC's complex and multiparty proceedings would soon overwhelm the system if agreed-upon settlements and acquiesced-in agency dispositions were not the rule rather than the exception. Accommodation is facilitated by requiring applications for rehearing, in which the remaining issues to which various parties object, and the various grounds for their objections, must be specified; and by enabling FERC to assume, in recasting its final order, and all the private parties to assume, in post-rehearing-application settlement negotiations, that those issues which a party did not consider important enough to raise cannot form a basis for that party's obstructing an accommodation which other parties are willing to accept. If that is not the true purpose, it is at least a plausible one, and so we could not ignore the language of the statute (if we were inclined to do so) with any confidence that no harm was done.

In sum, we think applicable to this case, *mutatis mutandis*, the analysis that the First Circuit applied to another of the technical requirements of § 19, its specification that the application for rehearing must be filed within 30 days:

> [W]e do not think that the purpose of the statute is purely one of administrative exhaustion.... We have no basis for assuming that the need for prompt resolution of Commission affairs is any less important a goal than that of permitting the Commission a second chance to modify its decisions....

While our concerns here may seem unduly technical, we believe they are of considerable importance both for admin-

---

7. Thus, § 19 differs fundamentally from the routine judicial-review statutes we discussed in *Washington Association for Television & Children v. FCC*, 712 F.2d 677, 682 & n. 6 (D.C.Cir. 1983), under which, we said, it is "not always necessary for a party to raise an issue" before the agency, "so long as the [agency] in fact considered the issue." *Id.* at 682 (footnote omitted). Since none of those statutes contain an application-for-rehearing requirement it is reasonable to believe that they have no purpose beyond assuring agency attention to the point on appeal.

istrative agencies and the courts. To accept petitioner's argument, we would have to rewrite § 19(a) fundamentally.... [The statute] appears to be a tightly structured and formal provision. Neither the Commission nor the courts are given any form of jurisdictional discretion.

*Boston Gas Co. v. FERC*, 575 F.2d 975, 979 (1st Cir.1978).

\* \* \* \* \*

The petitions for review in Cases Nos. 82–2173, 82–2204, 82–2270 and 82–2311 are dismissed because they seek review of an unreviewable agency order. The petition for review in Case No. 82–2527 is dismissed because petitioner seeks to raise an objection not raised in its petition for rehearing.

*So ordered.*

